NO.
12-05-00335-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

VICKIE
JONES,       §          APPEAL FROM THE 114TH

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE   §          SMITH
COUNTY, TEXAS

                        




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION

            Vickie Jones
appeals her conviction for the offense of injury to a child.  In two issues, Appellant contends that the
evidence is legally and factually insufficient to sustain the conviction. We
affirm. 

Background








            When Appellant presented her son,
D.V., to the emergency department at Trinity Mother Frances Hospital, the
nineteen month old boy was in acute distress. 
The child was unresponsive and had multiple injuries including cuts to
his face, some appearing to be more recent than others, and a large contusion,
or area of swelling, on his forehead. 
Further examination revealed what appeared to be a burn to the child’s
lower back that was healing.  A computed
tomography (CT) scan was done, which revealed a subdural hematoma in the area
of the swelling to his forehead.  








            Subdural hematomas are of varying
intensity and danger.  Minor hematomas
are not treated with surgery and may resolve themselves after a period of
time.  D.V.’s lack of consciousness and
the results of his CT scan showed that his injury was significant.  The injury to his head was causing bleeding
within his skull.  The bleeding increased
the pressure within his skull and was causing his loss of consciousness.  If not relieved, the buildup of pressure could
have caused his death.  

            D.V. was flown by helicopter to a
hospital in Dallas where a neurosurgeon operated on him immediately.  Because of the seriousness of his condition,
she performed an aggressive procedure called a decompressive craniectomy.  The neurosurgeon testified that a
decompressive craniectomy is only done with children as a last resort.  The surgery involves removing a part of the
skull.  This is done to allow the surgeon
to remove pooled blood and to provide room for the brain to expand.  This was done on D.V., and the portion of his
skull was stored in his abdomen.  The
neurosurgeon testified that many children who need this surgery do not survive
and that many of the children who do survive suffer devastating brain injuries.

            Because of the seriousness of D.V.’s
injuries, the emergency department doctor alerted both the Tyler police and
Child Protective Services.  Both agencies
began investigations.  Appellant told the
police, as she had told the hospital personnel, that D.V. had fallen from bed
at about 6:00 a.m. that morning. 
According to her statement, the child seemed uninjured and she returned
to sleep.  At 10:00 a.m., the child was
unresponsive and she decided to take him to the hospital.  Although she lived about a mile from the hospital,
Appellant did not present D.V. at the hospital until 12:17 p.m. 

            Appellant offered innocuous, but
uncorroborated, explanations for the child’s other injuries and told the
authorities that she had been the only adult at her home that morning.[1]  The police executed a search warrant at
Appellant’s home.  They recovered items
of physical evidence including a truncheon and took samples of what was later
determined to be D.V.’s blood in various places on the floor of the home.  They measured the height of the bed from
which Appellant said D.V. fell.  The top
of the bed was twenty–six inches from the floor.  The floor was constructed of particle board
covered with vinyl tile.

            A Smith County grand jury indicted
Appellant for the offense of injury to a child resulting in serious bodily
injury, a felony of the first degree. 
Appellant pleaded not guilty and the case was tried to a jury.  At trial, there was expert testimony that the
bleeding in D.V.’s skull was recent and that an injury of this magnitude would
not come as the result of a fall from a bed twenty-six inches from the
floor.  Rather, the expert witnesses
testified that such an injury might result from a fall from eight or ten feet,
but that it was more likely to have come from a very forcible strike to the
head.

            The jury found Appellant guilty and
assessed punishment at sixty years of imprisonment.  This appeal followed. 

Sufficiency of the
Evidence

            In two issues, Appellant argues that
the evidence was legally and factually insufficient to show that the injuries
to D.V. were the result of an intentional act or that she was the one
responsible. 

Standard of
Review–Legal Sufficiency

            The Fourteenth Amendment due process
guarantee requires that there be legally sufficient evidence to sustain a
criminal conviction.  Jackson v.
Virginia, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d
560 (1979); see also Russeau v. State, 171 S.W.3d 871, 877
(Tex. Crim. App. 2005).  Examined in a
light most favorable to the jury’s verdict, evidence is legally sufficient if
any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789.  

            The legal sufficiency of the
evidence is measured against the offense as defined by a hypothetically correct
jury charge.  See Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
A hypothetically correct jury charge “accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State’s
burden of proof or unnecessarily restrict the State’s theories of liability,
and adequately describes the particular offense for which the defendant is
tried.”  Id.

            As authorized by the indictment, the
State was required to prove that Appellant intentionally or knowingly caused
serious bodily injury to D.V. and that D.V. was fourteen years of age or
younger.  Tex. Pen. Code Ann. § 22.04(a), (c)(1), (e) (Vernon 2005).

Standard of
Review–Factual Sufficiency








            In reviewing factual sufficiency of
the evidence, we must determine whether a neutral review of the evidence, both
for and against the finding, demonstrates that a rational jury could find guilt
beyond a reasonable doubt.  Zuniga
v. State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  Evidence is factually insufficient when
evidence supporting the verdict, considered by itself, is too weak to support
the finding of guilt beyond a reasonable doubt. 
Id.  Evidence is
also factually insufficient when contrary evidence is so strong that the beyond
a reasonable doubt standard could not have been met.  Id. at 484–85.  A verdict will be set aside “only if the
evidence supporting guilt is so obviously weak, or the contrary evidence so
overwhelmingly outweighs the supporting evidence, as to render the conviction
clearly wrong and manifestly unjust.”  Sims
v. State, 99 S.W.3d 600, 601 (Tex. Crim. App. 2003); Ortiz v.
State, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002).  A clearly wrong and manifestly unjust verdict
occurs where the jury’s finding “shocks the conscience” or “clearly
demonstrates bias.”  Zuniga,
144 S.W.3d at 481. 

            As in legal sufficiency review, the
fact finder is the sole judge of the weight and credibility of a witness’s
testimony.  Wesbrook v. State,
29 S.W.3d 103, 111-12 (Tex. Crim. App. 2000); Johnson v. State,
23 S.W.3d 1, 7 (Tex. Crim. App. 2000). 
The jury may choose to believe all, some, or none of a witness’s
testimony.  Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

Analysis

            Appellant does not argue that D.V.
did not suffer serious bodily injury or that he was not a child.  Rather, her argument is that the evidence was
not sufficient to show that she injured D.V. Two powerful facts support the
conclusion that Appellant injured D.V. 
First, Appellant was the only adult present when D.V. was injured.  Second, there was expert testimony that the
injury D.V. sustained could not have come from a short drop to the floor and
would have had to have come as the result of a tremendous amount of force being
applied to his head.  Since Appellant is
the only person who could have applied that force, the evidence is sufficient
to allow a rational trier of fact to conclude that Appellant was guilty beyond
a reasonable doubt.  See, e.g.,
Bryant v. State, 909 S.W.2d 579, 583 (Tex. App.–Tyler 1995, no
pet.).

            These two essential facts are also
persuasive in a neutral review of the evidence. 
Against these facts, and the inferences to be drawn from them, is
Appellant’s statement to the police.  If
Appellant’s statement were true, that D.V. merely fell from bed, she could not
be convicted of a knowing or intentional injury to a child.  

            After a careful review of the
evidence, we conclude that the jury’s choice between the two opposing scenarios
was reasonable.  There was no direct
evidence that Appellant caused the injury. 
But the circumstantial inferences to be drawn from the fact that she had
care and custody of D.V. when he suffered such a devastating injury coupled
with the expert testimony about how the injury would have occurred are
compelling.  Furthermore, the evidence of
the other injuries D.V. sustained in the weeks before this injury, and the
physical evidence including his blood being located in several places in the
home, lend further support to the verdict. 
The evidence was neither too weak to sustain the verdict nor was it outweighed
by contrary evidence.  We overrule
Appellant’s first and second issues.

Disposition

            We affirm the judgment
of the trial court. 

 

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

 

Opinion delivered August 16, 2006.

Panel
consisted of Worthen, C.J. and Griffith, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO
NOT PUBLISH)











[1] The child’s father was
in jail at the time of the injury.